## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACEY HEMPHILL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. CIV-11-1192-HE** |
| | ) |
| JUSTIN JONES, et al., | ) |
| | ) |
| **Defendants.** | ) |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a state prisoner, brings this action alleging violations of his civil rights while housed at the Clara Waters Community Correctional Center (CWCCC).[1]  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

In accordance with the undersigned's order and with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), CWCCC has filed a Special Report [Doc. No. 32].  DOC Defendants Jones and Morton have filed a Motion to Dismiss and/or Motion for Summary Judgment (DOC Defendants' Motion) [Doc. No. 31], and CWCCC Defendants Jackson, Young, Offaeili, Brown, Whitaker, Cooper and Schrader have filed another Motion to Dismiss and/or Motion for Summary Judgment (CWCCC Defendants' Motion) [Doc. No. 37].  Plaintiff has responded to these motions.  Amended Response [Doc. No. 42].

For the reasons that follow, the undersigned recommends that:  1) Defendants'

---

[1]Plaintiff has since been transferred to another facility.  *See* Doc. No. 5.

motions be granted in part;[2] 2) Plaintiff's claims involving the nutritional inadequacy of his vegetarian diet, violation of equal protection, and denial of access to the grievance process be dismissed on screening; 3) Defendant T. Waldman be dismissed on screening; and 4) the court decline supplemental jurisdiction over Plaintiff's state law claims.

## Plaintiff's Amended Complaint

Plaintiff's twenty-nine page Amended Complaint raises four counts and names twelve different defendants. *See* Amended Complaint, pp. 1-29 [Doc. No. 9].[3] In Count One, Plaintiff includes thirty numbered statements, some of which simply provide a chronology of events and some of which appear to be asserting claims for relief. *See id.*, pp. 1-15. In Counts Two-Four, Plaintiff adds additional numbered statements and sets forth claims for relief based on the new statements and the numbered statements in Count One. *See id.*, pp. 15-26. After comparison of the four Counts, the undersigned has liberally construed the Amended Complaint as follows:

According to Plaintiff, he is a member of the religious group "'Nation of Gods and Earths,'" which requires him to strictly observe dietary laws, including adherence to a vegetarian "non-pork/non-beef" diet. *Id.*, pp. 1-15. Plaintiff alleges that while housed at CWCCC, he was subject to: 1) a one-time denial of a vegetarian tray on January 11, 2011; 2) nutritional inadequacy of his vegetarian diet; and 3) periodic contamination of his

---

[2]In light of the recommendation for dismissal (on motion and screening) on other grounds, the undersigned has not addressed all of the defenses raised by DOC and CWCCC Defendants.

[3]Page citations herein reflect this court's CMECF pagination.

vegetarian tray with Jello, which contains animal product.  *See id.*[4]  He also alleges

conspiracy, retaliation and denial of access to grievance procedures.  *See id.*, pp. 15-26.

Plaintiff argues that these alleged illegalities violated the First, Fifth, Eighth and

Fourteenth Amendments of the federal constitution, various articles of the Oklahoma

constitution, Oklahoma's Religious Freedom Act (ORFA), and the federal Religious Land

Use and Institutionalized Persons Act (RLUIPA).[5]  *See id.*, pp. 4-5, 24.[6]

---

[4]Plaintiff also alleges that he was temporarily and wrongfully deprived of his "Universal Flag of Islam" medallion.  Amended Complaint, pp. 7. 21.  The undersigned has not addressed this allegation because in the Amended Complaint, this claim is alleged exclusively against Linda Teegarden, a party for whom the undersigned has already recommended dismissal for failure to serve.  *See* Report and Recommendation [Doc. No.47].  In his Amended Response, Plaintiff attempts to urge this claim against DOC Defendants Jones and Morton and CWCCC Defendants Cooper, Whitaker, Brown and Young.  *See* Amended Response, pp. 26-27.  However, the undersigned declines to address a claim raised for the first time in a response brief.  *See Bruner v. Baker*, 506 F.3d 1021, 1030 (10th Cir. 2007) ("Bruner's failure to raise [the] argument in either [the original or amended] complaint allows the district court discretion to ignore the argument.").  And, Plaintiff's inclusion of additional defendants on the claim has not been liberally construed as a motion to amend because aside from listing the additional parties, Plaintiff gives no explanation as to their specific actions or participation in the event.

[5]Plaintiff also invokes the Religious Freedom Restitution Act (RFRA).  Amended Complaint, p. 4.  That act was declared unconstitutional as it applies to state and local governments, and the relevant portions were incorporated into RLUIPA.  *See Sossamon v. Texas*, __ U.S. __, 131 S. Ct. 1651, 1655-56 (2011) (discussing the evolution of RLUIPA and the interplay between RLUIPA and RFRA).

[6]Throughout his Amended Complaint, Plaintiff also complains about the violation of prison policy, but it is unclear whether he seeks relief based on that violation.  Regardless, any claim for relief based on the violation of prison policy would fail as a matter of law.  *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are "not designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation" (citation omitted)).

**Standard of Review**

The DOC and CWCCC Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6). The court additionally has the responsibility to screen and dismiss any claim in a civil action filed by a prisoner who is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii). Under either statute, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010).

Both sets of Defendants seek dismissal in part based on Plaintiff's failure to exhaust available administrative remedies. Plaintiff addressed the issue within the four-corners of his Amended Complaint, identifying the only three grievances he believes he exhausted. *See* Amended Complaint, p. 16. The court may therefore rely on those documents, and the administrative materials submitted by the parties, in addressing the motions to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (holding that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir.2003) ("In deciding a Rule 12(b)(6) motion based on exhaustion, the court may consider the attached administrative materials."), *abrogated in part on other grounds*, *Jones*

4

*v. Bock*, 549 U.S. 199 (2007).

## **Eleventh Amendment Immunity**

Defendants Jones, Morton and Young were sued in both their individual and official capacities. *See* Amended Complaint at pp. 1, 3. Defendants seek dismissal in part based on the Eleventh Amendment, and the undersigned agrees that to the extent Plaintiff seeks monetary relief from these Defendants in their official capacities, they are immune from suit.

As a general rule, the Eleventh Amendment immunizes states from suit in federal court. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) ("the Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies."). Moreover, claims for damages against state employees in their official capacities are construed as claims against the state and are thus likewise barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985) (a suit against an individual acting in an official capacity is properly treated as a suit against the state itself and is barred under the Eleventh Amendment); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (Eleventh Amendment sovereign immunity barred § 1983 claims against prison officials in their official capacities).

An exception to this bar exists where Eleventh Amendment immunity has been waived by the state or abrogated by Congress. *See Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). However, the State of Oklahoma has not waived its Eleventh Amendment immunity, *id.* at 589, nor has Congress abrogated the Eleventh Amendment immunity through the enactment of § 1983 or RLUIPA. *See Quern*

*v. Jordan*, 440 U.S. 332, 345 (1979) (§ 1983); *Sossamon*, 131 S. Ct. at 1658-61 (RLUIPA).

Therefore, the Eleventh Amendment forecloses all claims for monetary damages against

Defendants Jones, Morton and Young in their official capacities, and such claims should be

dismissed.

**Exhaustion of Administrative Remedies**

All Defendants argue that Plaintiff has failed to exhaust the available administrative

remedies.  Because "no unexhausted claim may be considered[,]" *Jones*, 549 U.S. at 220, the

issue of exhaustion must be considered before the merits of Plaintiff's case are addressed.

**I.  The Statutory Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust

*all* available administrative remedies before resorting to a § 1983 action in federal court.

Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

*Id*.  In construing this legislation, the United States Supreme Court has held "that exhaustion

is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

*Jones,* 549 U.S. at 211.  And, under the plain language of the statute, exhaustion must occur

*before* a complaint is filed.  *See Booth v. Churner*, 532 U.S. 731, 738 (2001) ("The available

remedy must be exhausted before a complaint under § 1983 may be entertained." (internal

quotation marks omitted); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)

("The plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . .  The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.").

## II.  The Exhaustion Process

As a DOC inmate, Plaintiff was required to comply with the "Offender Grievance Procedures" set forth at ODOC OP-090124.  CWCCC Defendants' Motion, Ex. 1.

Pursuant to those procedures, Plaintiff was first required to attempt informal resolution with a staff member.  *See id*., ¶ IV. A.  If that attempt was unsuccessful, Plaintiff could file a request to staff.  *See id.*, ¶ IV. B.  And, if he remained dissatisfied, Plaintiff had the opportunity to file a formal grievance.  *See id.*, ¶ V. A.  If Plaintiff remained dissatisfied at that level, he could then appeal to the DOC administrative review authority.  *See id.*, ¶ VII.

## III.  Claims Properly Exhausted by Plaintiff

In his Amended Complaint, Plaintiff states that he had exhausted all of his claims in three relevant grievances, ARA #11-1165, ARA #11-1116, and ARA #11-1167.  Amended Complaint, pp. 16, 25.  DOC and CWCCC Defendants agree that Plaintiff properly exhausted those three grievances, the sum of which clearly notified prison officials that Plaintiff believed his vegetarian diet to be nutritionally inadequate and unequal to the general population.  *See* DOC Defendants' Motion, p. 15; CWCCC Defendants' Motion, p. 14; *see also* Special Report, Ex. 17H, 17I, 17J.

## IV.  Claims Not Properly Exhausted by Plaintiff

However, none of the three exhausted grievances makes any mention of his claims

regarding:  1) a one-time denial of a vegetarian tray on January 11, 2011; 2) periodic contamination of his vegetarian tray with Jello, which contains animal product;[7] 3) retaliation; and 4) conspiracy.  *See* Special Report, Ex. 17H, 17I, 17J.  Thus, the undersigned finds these claims unexhausted.

## A.  <u>The One-Time Denial of a Vegetarian Tray on January 11, 2011</u>

Plaintiff filed a request to staff regarding this issue, *see id.*, Ex. 12, but there is no evidence that he complied with any of the other requirements to complete the exhaustion process.  Plaintiff does not dispute his lack of exhaustion on the one-time denial of a vegetarian tray on January 11, 2011, and the undersigned therefore finds the claim unexhausted.

## B.  <u>The Periodic Contamination of Plaintiff's Tray with Jello</u>

In response to Defendants' contention that he failed to exhaust his claim that his meals are periodically contaminated due to the inclusion of Jello on his tray,[8] Plaintiff asserts that prison officials interfered with his attempt to properly exhaust this claim by repeatedly and

---

[7]Plaintiff did submit a grievance complaining about the lack of fresh fruit, in which he asserted that because Jello contains animal product, it could not qualify as a fruit substitute as part of his diet.  *See* Special Report, Ex. 17H.  However, such reference was insufficient to put officials on notice of his claim that the inclusion of Jello contaminated his tray in violation of his religious practice.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (stating that exhaustion requires the prisoner to supply enough information for internal investigation of the complaint), *overruled on other grounds*, *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008); *see also Sayed v. Profitt*, 415 Fed. Appx. 946, 949 n.4 (10th Cir. 2011) (refusing to address claim not sufficiently raised in a grievance so as to give prison officials notice of the alleged wrongdoing).

[8]Plaintiff also defends the apparent lack of exhaustion regarding his claim for the temporary seizure of his religious medallion.  *See* Amended Complaint, p. 17; Amended Response, p. 10. However, that claim is not before the court.

improperly rejecting his grievance appeals in February 2012. Amended Response, pp. 10-11. But the court need not decide whether prison officials thwarted those efforts,[9] because Plaintiff filed his Amended Complaint in November 2011, approximately three months *before* attempting to properly file a grievance appeal. As noted above, a claim must be exhausted *prior* to filing suit. *See Jones*, 549 U.S. at 211; *Booth*, 532 U.S. at 738. Accordingly, the undersigned finds that the claim regarding the Jello contamination was unexhausted when the Amended Complaint was filed and therefore subject to dismissal. *See Ruppert v. Aragon*, 448 Fed. Appx. 862, 863 (10th Cir. 2012) (affirming district court's dismissal of prisoner's claim which was unexhausted at the time he filed his suit, even though the claim was exhausted by the time the case was ripe for decision, because the PLRA "makes exhaustion a precondition to *filing* a suit, [and] an action brought before administrative remedies are exhausted must be dismissed . . . ." (emphasis in original)).

## C.  Retaliation & Conspiracy

Plaintiff alleges that Defendant Offaeili retaliated against him for seeking a religious, vegetarian diet and that Defendants conspired together to violate his rights. Amended Complaint, pp. 15-26. However, as noted above, the three properly exhausted grievances do not include any allegations of retaliation or conspiracy. Plaintiff fails to defend the lack of exhaustion on these issues, and the undersigned recommends dismissal. *See Carr v. Brill*,

---

[9]When "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).

187 Fed. Appx. 902, 905 (10th Cir. 2006) ("Because Mr. Carr did not use the grievance system to report the alleged retaliation, he did not exhaust his available administrative remedies with respect to this claim."); *Martin v. Butler*, 10 Fed. Appx. 773, 774 (10th Cir. 2001) (affirming dismissal of conspiracy claim as unexhausted because the issue had not been separately raised in the grievance process); *Thomas v. Parker*, No. CIV-10-308-W, 2011 WL 996788, at *1-2 (W.D. Okla. Mar. 17, 2011) (adopting magistrate judge's finding that prisoner's claims of conspiracy and retaliation had not been independently exhausted).

## Screening of Plaintiff's Remaining Claims

Plaintiff has three remaining claims: 1) the nutritional inadequacy of his vegetarian diet, 2) a violation of equal protection, and 3) the denial of access to the grievance process. Neither DOC nor CWCCC Defendants directly address these claims on the merits; however, on screening, the undersigned recommends the dismissal.

## I.  The Alleged Nutritional Inadequacy of Plaintiff's Vegetarian Diet

Plaintiff generally alleges that his religiously-mandated vegetarian diet at CWCCC was nutritionally inadequate. However, he cites only four specific examples, stating that on: 1) November 30, 2010, the vegetarian tray was "'unpalatable'"; 2) December 9, 2010, he was served "'salad' only"; 3) December 27, 2010, Plaintiff's breakfast lacked a protein substitute; and 4) December 28, 2010, Plaintiff's lunch contained fewer items than the general population meal. Amended Complaint, pp. 7-9.[10]

---

[10]Other than these specific examples, Plaintiff states generally that from September 29, 2010, to October 4, 2010, he experienced "dietary deficiencies." Amended Complaint, pp. 5-6. These

The undersigned finds that even accepting the allegations as true, Plaintiff has failed to state a valid claim for relief under RLUIPA or the First, Eighth or Fourteenth Amendments.  Accordingly, this claim should be dismissed on screening.

## A.  **Standards**

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000cc-1(a) (2006).  According to the Tenth Circuit,

> "[A] religious exercise is substantially burdened under [RLUIPA] when a government . . . places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice - an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010).

The First Amendment also guarantee inmates the reasonable opportunity to pursue their sincerely-held religious beliefs.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  In order to state a claim that Defendants violated this constitutional right, Plaintiff must again "adequately allege that the defendants 'substantially burdened [his] sincerely-held religious beliefs.'" *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)).

---

"deficiencies" are not described in a manner capable for review.  *See U.S. ex rel. Boothe v. Sun Heathcare Group, Inc.*, 496 F.3d 1169, 1175 (10th Cir. 2007) ("We have long made clear that . . . conclusory and ill-developed arguments are insufficient to permit us meaningful judicial review and will not be entertained.").

Under the Eighth Amendment, prison officials must ensure that "inmates receive the basic necessities of nutritionally adequate food. . . ." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (internal quotation mark and citation omitted). Thus, "[a] substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment[.]" *Id.* (internal quotation marks and citation omitted).

Finally, the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty or property. *See* U.S. Const. amend. XIV, § 1.

## B.  Analysis of Plaintiff's Specific Allegations

As noted above, Plaintiff's specific allegations, taken as true, show the denial of an adequate meal on four occasions. The undersigned finds such allegations reflect a *de minimis* rather than a substantial burden on Plaintiff's religious exercise and therefore fail to state a violation of RLUIPA or the federal constitution.

A similar holding was reached in *Strope v. Cummings*, 381 Fed. Appx. 878 (10th Cir. 2010). In *Strope*, the inmate raised claims under RLUIPA and the First and Eighth Amendments alleging that his religiously-mandated kosher meal was nutritionally inadequate or unpalatable on seven different occasions. *Id.* at 880-81. The district court found that the inmate's "scattered and minor complaints about kosher meals were insufficient as a matter of law to show that defendants had imposed a substantial burden on his religious exercise," and the Tenth Circuit agreed. *Id.* at 881. Specifically, the court found that the "complaints summarized . . . reflect the inconvenience of non-preferred or occasionally unsatisfactory items in a meal" but did not "constitute a substantial burden on [the] practice of maintaining

a kosher diet." *Id.* The circuit court agreed that such complaints failed to demonstrate a violation of the Eighth Amendment. *See id.*

Because of the factual and legal similarities between *Strope* and the present case, the undersigned finds that decision persuasive. Plaintiff generally alleges an inadequate diet but his four examples, even if accepted as true, fail to demonstrate a *substantial* burden on the exercise of his religion or a *substantial* deprivation of nutritious food. Thus, applying *Strope*, the undersigned finds Plaintiff's allegations of *de minimus* insufficiencies fail to state a valid claim for relief under RLUIPA or the First or Eighth Amendments. *See also Watkins v. Donnelly*, No. CIV-09-1381-C, 2011 WL 7063710, at *6 & n.26 (W.D. Okla. Dec. 19, 2011) (recommendation by magistrate judge finding the denial of three religious meals to be *de minimus* rather than a substantial burden on a religious exercise and collecting cases in support), adopted, 2012 WL 163841 (W.D. Okla. Jan. 19, 2012).

Further, courts have found that "[d]eprivation of a particular diet for a short time, including a religious diet, does not implicate a liberty interest" under the Fourteenth Amendment. *See Jordan v. Adams County*, No. 10-cv-02176, 2012 WL 2029980, at *5 (D. Colo. Jan. 17, 2012) (collecting cases); *Mosier v. Alexander*, No. CIV-05-1068-R, 2006 WL 3228703, at *1, 3 (W.D. Okla. Nov. 7, 2006) (adopting a finding that plaintiff failed to state a valid claim for denial of due process when kosher meals were suspended for 30 days). Consequently, the undersigned recommends that Plaintiff's claim regarding the alleged nutritional inadequacy of his diet be dismissed on screening.

## II.  The Alleged Violation of Equal Protection

According to Plaintiff, prison officials accommodate the dietary needs of other religions, but treat Plaintiff differently by failing to provide him "with a 'protein substitute' for beef and pork."  Amended Complaint, pp. 24-25.  Plaintiff believes that this constitutes a violation of the Equal Protection Clause.  The undersigned disagrees.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotations and citation omitted).  As applied here, the Equal Protection Clause protects a prisoner from being denied a reasonable opportunity to pursue religious beliefs compared to the opportunity afforded other prisoners who adhere to different religious beliefs.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  That said, "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

In large part, Plaintiff's allegations of an equal protection violation rely on vague legal terminology without any factual support.  *See* Amended Complaint, pp. 4, 20, 24.  To that end, the undersigned cannot address Plaintiff's general complaints.  *See, e.g., Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) (affirming dismissal of equal protection claim where plaintiff's allegations were "merely conclusory in that they do not allege the factual basis for an equal protection claim" and recognizing that "even *pro se* litigants must do more than make mere conclusory statements regarding constitutional claims").

14

Plaintiff does offer one example of "protein substitute" discrimination, explaining that on one morning he received a breakfast tray with "plain white gravy, 2 biscuits, a 1/25 slice of grapefruit and 1 boiled egg."  Amended Complaint, p. 8.  In comparison, other "special diet" inmates received "1 boiled egg, 2 biscuits, a 1/25 slice of grapefruit" and "gravy with beef meat."  *Id.*[11]

The undersigned accepts Plaintiff's allegation - that prison officials failed to offer him a separate protein substitute for the beef in the gravy - as true and finds that it nevertheless fails to establish a constitutional violation.  That is, Plaintiff has failed to explain how this one incident prevented him from exercising his religious beliefs or otherwise rose to the level of an equal protection violation.  *See Gallagher v. Shelton*, No. 03-3454, 2009 WL 9023927, at *7 (D. Kan. Mar. 31, 2009) (holding that plaintiff's complaint involving the prison's failure to offer a comparable religious meal on one occasion was *de minimis* and that plaintiff had failed to demonstrate how the "single incident impaired his ability to exercise his *religious* beliefs" under the Equal Protection Clause (emphasis in original)).  Accordingly, the undersigned recommends dismissal of this claim on screening.

## III.  Plaintiff's Allegation Regarding Denial of Access to Grievance Procedures

Plaintiff claims that CWCCC Defendant Brown deprived him of "his constitutionally protected right of 'meaningful access' to the prison grievance procedure . . . ."  Amended

---

[11]When Plaintiff complained about a lack of protein substitute for the beef in the gravy, he was informed that the beef was "seasoning" and that an egg was provided as the "portion item for protein" on the tray.  Special Report, Ex. 17J, p. 4.

Complaint, p. 21.  However, Plaintiff fails to include any factual explanation of Defendant Brown's actions, and the lack of specificity is fatal to his claim.  *See Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).  Therefore, the undersigned recommends dismissal of Plaintiff's conclusory claim involving denial of access to grievance procedures.

### Screening of Defendant Waldman

Plaintiff recently identified Defendant T. Waldman as the party listed as "Unknown Employee" in the Amended Complaint, and the court allowed the substitution.  *See* Order, p. 1 [Doc. No. 45].  Defendant Waldman has yet to be served; nevertheless, the undersigned recommends dismissal on screening.

Plaintiff's description of Defendant Waldman's conduct is rambling and imprecise at best.  Liberally construed, the allegations appear to suggest Defendant Waldman's partial responsibility for the lack of an adequate vegetarian diet.  *See* Amended Complaint, pp. 11, 13, 21-30.  As concluded above, Plaintiff has failed to state a valid claim for relief on the issue of an inadequate diet.  Accordingly, the undersigned finds that Plaintiff's allegations of Defendant Waldman's alleged responsibility for such diet would likewise fail to state a claim.  It is therefore recommended that the claim against Defendant Waldman be dismissed on screening.

### Plaintiff's State Law Claims

In the Amended Complaint, Plaintiff seeks additional relief under the Oklahoma

Constitution and several Oklahoma statutes.  However, as discussed above, the undersigned recommends dismissal of all of Plaintiff's federal claims.  In accordance with 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction."  *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").  Therefore, if the court adopts the recommendation to dismiss all of Plaintiff's federal claims, it is recommended that supplemental jurisdiction be declined over Plaintiff's state law claims and that those claims be dismissed without prejudice.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, it is the recommendation of the undersigned Magistrate Judge that DOC Defendants' Motion [Doc. No. 31] and CWCCC Defendants' Motion [Doc. No. 37] be granted in part.  Plaintiff's claims involving:  1) the alleged denial of an adequately nutritious diet, 2) violation of equal protection, and 3) denial of access to grievance procedures, should be dismissed on screening.  Although Defendant Waldman has not been served in this matter and thus did not join the CWCCC Defendant's Motion, for the reasons discussed above the undersigned likewise recommends dismissal of this party on screening.  Finally, the undersigned recommends that the court decline supplemental

jurisdiction over Plaintiff's state law claims.[12]

The parties are advised of their right to object to this Report and Recommendation by November 20, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 31st day of October, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

---

[12]The undersigned has previously recommended dismissal without prejudice of CWCCC Defendants Teegarden and Franklin based on a failure to perfect service.